UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SEAN SALLEY,
                Plaintiff,

v.

WILLIAM KEYSER, ANTHONY ANNUCCI,
KEVIN KELLY, THOMAS GRIFFIN, and
PATRICK GRIFFIN,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 1502 (VB)

Briccetti, J.:

    Plaintiff Sean Salley, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants unlawfully transferred him from Sullivan Correctional Facility ("Sullivan") to Green Haven Correctional Facility ("Green Haven") in retaliation for the exercise of his First Amendment rights.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #26).

    For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the amended complaint as true, and draws all reasonable inferences in plaintiff's favor.

    Plaintiff alleges that while he was incarcerated at Sullivan, defendant correction officer Kevin Kelly harassed him, and that plaintiff reported that harassment to his "area supervisor." (Am. Compl. ¶ 9). Plaintiff alleges Kelly then submitted a "false and inaccurate misbehavior report against plaintiff." (Id.). On September 21, 2015, plaintiff filed a "formal complaint" against Kelly "based upon staff misconduct," and to complain about the false misbehavior report.

1

(Id.). The Superintendent of Sullivan, defendant William Keyser, designated his deputy superintendent to investigate plaintiff's complaint. By memorandum dated September 25, 2015, the deputy superintendent informed plaintiff that, based on "an investigation which included interviews with [plaintiff] and Officer Kelly," and Kelly's "written denial [of the] allegations," he concluded "there [was] insufficient evidence to show any misconduct by Officer Kelly during his dealings with" plaintiff. (Am. Compl. ¶ 11).

Plaintiff alleges on October 2, 2015, Kelly came into plaintiff's housing area, even though he was not scheduled to work there that day, and spoke to another inmate. Kelly allegedly asked the other inmate "if he would like plaintiff's job assignment of block clerk." (Am. Compl. ¶ 13). Plaintiff alleges Kelly told the other inmate "he would make sure that plaintiff would be fired as block clerk . . . because no 'nigger' inmate in the facility should have that job." (Id.).

According to plaintiff, on October 5, 2015, Kelly "made the hand gesture of a gun shooting plaintiff" when he saw plaintiff being escorted down a hallway. (Am. Compl. ¶ 14).

On October 10, 2015, Kelly was assigned to work in plaintiff's housing unit and "no further incidents transpired." (Am. Compl. ¶ 16).

On October 13, 2015, plaintiff was transferred to Green Haven.

Plaintiff submitted a grievance regarding the transfer. On January 14, 2016, a hearing on plaintiff's grievance was held. The deputy superintendent of Green Haven stated in a written response that plaintiff had been transferred for "security reasons." (Am. Compl. ¶ 19). At the hearing, plaintiff "argued that [defendant] Keyser did not have any 'legitimate security reasons' for his transfer." (Id. ¶ 20).

Plaintiff asserts prior to his transfer, he "did not have any issues dealing with security as to where he needed to be placed on a transfer from Sullivan due to a threat for his own security or the security of someone else." (Am. Compl. ¶ 22). He asserts that in light of this, "the only motivating factor for defendant Keyser to transfer plaintiff from Sullivan to Green Haven was to retaliate against plaintiff." (Id. ¶ 23).

Plaintiff alleges Green Haven Superintendent Thomas Griffin "is continuing the retaliation against plaintiff," including by denying him the ability to "generate a source of income by programming." (Id. ¶ 31).

Plaintiff further alleges Sullivan Superintendent William Keyser "conspired with . . . [defendant] Patrick Griffin to transfer plaintiff to Green Haven, where his biological brother Thomas Griffin is superintendent, where plaintiff could be further punished and retaliated against." (Am. Compl. ¶ 32). As an example of that retaliation, plaintiff alleges a money order his mother sent was intentionally lost for a little over a week.

## DISCUSSION

I. Standard of Review

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Maloney v. Soc. Sec. Admin., 517 F.3d 70, 74 (2d Cir. 2008)). "'[F]ederal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking the

Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Retaliation Under Section 1983

Defendants argue plaintiff has failed plausibly to allege he was retaliated against for exercising his First Amendment rights.

Although it is a close call, the Court concludes plaintiff has stated a claim for retaliation against defendants Kelly and Keyser.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). To satisfy the causal connection prong, plaintiff must allege "the conduct was a substantial or motivating factor for the adverse actions." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

In addition, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

"But because prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' we are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d at 137 (quoting Dawes v. Walker, 239 F.3d at 491).

5

Here, plaintiff alleges defendant Kelly harassed and threatened him after plaintiff filed a complaint against Kelly, and that defendant Keyser transferred plaintiff from Sullivan to Green Haven in retaliation for filing the grievance against Kelly.

First, filing a grievance is speech protected under the First Amendment. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by" the First Amendment "and is actionable under § 1983.").

Second, plaintiff alleges the transfer was "adverse" because, among other things, it "inflicted a financial hardship" on him because "since his arrival [at] Green Haven [he] has been denied a program job assignment," and he "lost one of the highest pay grade program job assignments at Sullivan." (Am. Compl. ¶ 24). "The termination of a job assignment can under [certain] circumstances constitute adverse action, for purposes of the retaliation analysis." Gill v. Calescibetta, 2009 WL 890661, at *11 (N.D.N.Y. Mar. 31, 2009)[1] (citing Baker v. Zlochowon, 741 F. Supp. 436, 439 (S.D.N.Y. 1990)); See also Walker v. Pataro, 2002 WL 664040, at *6 (S.D.N.Y. Apr. 23, 2002) (collecting cases).

Third, plaintiff alleges a causal connection between the filing of his grievance and the transfer and loss of his block clerk job. Specifically, he alleges Kelly threatened to remove him from his job assignment for an unjustifiable reason, namely his race. In addition, he alleges he was transferred eight days after the last threat Kelly made toward him and just three days after Kelly was assigned to work in plaintiff's housing unit. Temporal proximity "provides circumstantial evidence of retaliation." Bennett v. Goord, 343 F.3d at 225. Finally, he alleges

---

[1] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

6

the only explanation given for defendant Keyser's decision to transfer him—for "security reasons"—was a pretext because plaintiff "did not have any issues dealing with security" prior to the transfer. (Am. Compl. ¶¶ 20, 22).

Finally, both Kelly and Keyser appear to have been personally involved in the events giving rise to plaintiff's retaliatory transfer claim. Specifically, plaintiff describes Kelly threatening to give his job assignment to someone else, using a racial slur to describe plaintiff, making a threatening gesture at plaintiff, and starting to work in plaintiff's housing unit three days before he was transferred. In addition, plaintiff alleges he submitted the complaint against Kelly to Keyser, who ultimately made the decision to transfer plaintiff to Green Haven.

Accordingly, plaintiff has plausibly alleged defendants Kelly and Keyser retaliated against him for the exercise of his First Amendment rights.

III.     Claims Against Other Defendants

The only other allegations in the amended complaint consist of claims against defendants Thomas Griffin, Patrick Griffin, and Anthony Annucci.

With respect to defendants Thomas Griffin and Patrick Griffin, plaintiff alleges Thomas Griffin "is continuing the retaliation against" him by "not programing him" (Am. Compl. ¶ 31), and that Patrick Griffin "conspired" with Keyser "to transfer plaintiff to Green Haven, where his biological brother Thomas Griffin is superintendent, where plaintiff could be further punished and retaliated against." (Id. ¶ 32). He further alleges that an incident involving a lost money transfer from his mother showed "Green Haven's administration was maliciously orchestrat[ing]" events "to inflict a form of further hardship" on plaintiff. (Id. ¶ 39).

These allegations are broad, conclusory, and plainly not plausible. In addition, plaintiff made clear in his opposition brief that "the transfer itself was the adverse action taken against

him," and that the allegations regarding threats, delayed mail delivery, and the writing of a false misbehavior report were only "inten[ded] to provide the court with a detailed statement of facts." (Opp. at 5). Plaintiff failed plausibly to allege defendants Thomas Griffin or Patrick Griffin were personally involved in the facts surrounding the transfer. Moreover, plaintiff's allegation that Patrick Griffin was involved in a conspiracy regarding the transfer is purely conclusory. "[C]onclusory allegations of a § 1983 conspiracy are insufficient." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks omitted).

Finally, the only allegation made against defendant Annucci appears to be based on a theory of supervisory liability. Specifically, plaintiff alleges Annucci "failed to take any action to curb such transfer and retaliation by defendants against plaintiff." (Id. at ¶ 40). To plead supervisory liability under Section 1983, a plaintiff must allege facts showing "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiff has failed to allege any facts suggesting Annucci knew about plaintiff's allegations of retaliatory transfer, had a policy that sanctioned such allegedly unjustified transfers, or otherwise had any reason to intervene in plaintiff's situation. As a result, he has failed to state a claim against defendant Annucci.

Accordingly, the claims against defendants Thomas Griffin, Patrick Griffin, and Anthony Annucci are dismissed.

8

IV.  Qualified Immunity

Defendants argue they are entitled to qualified immunity because "the alleged threats, mail delay, and false misbehavior report claims do not 'violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" (Defs.'s Br. at 9) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The Court disagrees.

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)).

As discussed above, plaintiff has sufficiently alleged defendants Kelly and Keyser retaliated against him for filing a grievance against Kelly.  This implicates a First Amendment right, which was clearly established at the time, and it was not on its face reasonable for defendants Kelly and Keyser to believe they could lawfully retaliate against plaintiff for exercising that right.

V.  Eleventh Amendment

Plaintiff's amended complaint states it sues defendants Kelly and Keyser in their individual and official capacities.  However, the Eleventh Amendment grants state officials acting in their official capacity immunity against suit for monetary damages.  Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir. 1993).  Therefore, all monetary damages claims against defendants Kelly and Keyser in their official capacity are dismissed.

VI.  Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "'should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim.'" Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (quoting Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)). District courts "'should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, plaintiff has already been given an opportunity to amend. In particular, by Order to Amend dated May 24, 2016, the Court directed plaintiff to amend his complaint and gave him specific instructions on what needed to be included in the amended complaint. (Doc. #7). Plaintiff followed those instructions and, on June 30, 2016, submitted a more detailed amended complaint, which is the subject of the instant motion. (Doc. #8).

Moreover, the central claim in plaintiff's amended complaint—that he was transferred from Sullivan to Green Haven in retaliation for the free exercise of his First Amendment rights—is going forward against the only defendants personally involved in that conduct. Plaintiff's other allegations are either barred as a matter of law or plainly insufficient to state a claim. As a result, allowing plaintiff to amend those claims would be futile.

10

The Court therefore declines to grant plaintiff leave to file a second amended complaint.

**CONCLUSION**

Defendants' motion to dismiss is (i) DENIED as to plaintiff's retaliatory transfer claim against defendants Kevin Kelly and William Keyser, and (ii) GRANTED in all other respects.

The Clerk is instructed to terminate defendants Anthony Annucci, Thomas Griffin, and Patrick Griffin.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #26).

Dated: April 17, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge