UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SEAN SALLEY,                              :
                        Plaintiff,        :
                                          :        **OPINION AND ORDER**
v.                                        :
                                          :        16 CV 1502 (VB)
WILLIAM KEYSER, ANTHONY ANNUCCI,          :
KEVIN KELLY, THOMAS GRIFFIN, and          :
PATRICK GRIFFIN,                          :
                        Defendants.       :
---------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Sean Salley, proceeding pro se and in forma pauperis, brings this action under 42

U.S.C. § 1983, alleging defendants unlawfully retaliated against him for exercising his First

Amendment rights.

    Plaintiff's claims against defendants Anthony Annucci, Thomas Griffin, and Patrick

Griffin were dismissed on April 17, 2017. (Doc. #31).

    Now pending is defendants William Keyser and Kevin Kelly's motion for summary

judgment. (Doc. #65).

    For the reasons set forth below, the motion is GRANTED.

    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    Defendants have submitted briefs, a statement of facts ("SOF"), and declarations with

supporting exhibits, and plaintiff has submitted an opposition and a declaration, which together

reflect the following background.

    Between December 23, 2009, and October 13, 2015, plaintiff was incarcerated at

Sullivan Correctional Facility ("Sullivan").

In 2014 and 2015, staff at Sullivan observed inmates participating in what they believed were commemorations of the 1971 uprising at Attica Correctional Facility (the "Attica uprising"). Specifically, on September 10, 2015, a number of inmates at Sullivan wore white shirts and refused to eat their meals.

Following an investigation, Sullivan staff concluded plaintiff was involved in planning the 2015 commemoration. The results of the investigation are memorialized in a September 30, 2016, memorandum from Lieutenant Maxwell to defendant Keyser, Sullivan's superintendent ("Supt. Keyser").

Plaintiff states that "in every facility throughout the state . . . nobody really eats" on the anniversary of the Attica uprising. (Wilson Decl. Ex. A: Pl. Dep. at 78). He acknowledges he was interviewed by Lieutenant Maxwell after the Attica uprising anniversary in 2015, but denies he was part of "any alleged Attica Uprising Demonstrations at Sullivan." (Pl. Decl. ¶ 39).

Plaintiff was not issued a misbehavior report related to the commemoration, because it was "relatively minor" and "peaceful." (Keyser Decl. ¶ 13). Nevertheless, according to Supt. Keyser, such demonstrations are taken "very seriously by security staff," because they can "devolve into more serious situations, such as riots." (Id. ¶12). Supt. Keyser determined "it was in the best interest of the ongoing security of the facility" to transfer plaintiff to another facility, in part because plaintiff's "familiarity with facility operations and his rapport with other inmates" enabled him to assist in planning these demonstrations. (Id. ¶ 14).

At some point between September 10 and September 17, 2015, Supt. Keyser requested plaintiff's transfer. The request is reflected in a September 17 email from Supt. Keyser to

Sullivan staff member Ariel Escobar, indicating there was a problem processing the request, and asking Escobar to resubmit it.

On September 17, 2015, plaintiff and defendant Correction Officer Kelly ("C.O. Kelly") had a disagreement regarding plaintiff's use of the telephone. C.O. Kelly issued plaintiff a misbehavior report (the "September 17 misbehavior report") for creating a disturbance, refusing a direct order, and issuing threats.

On September 18, 2015, plaintiff submitted a grievance regarding C.O. Kelly's "harassive & verbally abusive" behavior. (Keyser Decl. Ex. A at 3). The grievance states plaintiff complained to Sergeant Maliga because C.O. Kelly ordered plaintiff to perform tasks that were not part of plaintiff's job as a block clerk. The grievance states C.O. Kelly's harassment became "retaliatory . . . as a result of [plaintiff's] seeking intervention from Sergeant Maliga." (Id.)

At a September 21, 2015, disciplinary hearing related to the September 17 misbehavior report, plaintiff was found guilty of creating a disturbance and refusing a direct order. Plaintiff was penalized with ten days in keep lock, as well as ten days of lost privileges.

Plaintiff asserts that while he was on keep lock, C.O. Kelly offered plaintiff's job as a block clerk to another inmate, stating "[n]o nigger should have that job." (Pl. Decl. ¶ 18). In addition, at some point after plaintiff was released from keep lock, he walked by C.O. Kelly, who gestured toward plaintiff as if shooting a gun.

On October 5, 2015, Supt. Keyser's request to transfer plaintiff was approved, and plaintiff was transferred to Green Haven Correctional Facility ("Green Haven") on October 23, 2015.

Plaintiff states Green Haven is "the worst jail in [the] New York City Regional hub." (Pl. Dep. at 34). According to plaintiff, he continued to receive retaliatory treatment at Green Haven, due to his complaint and grievance regarding C.O. Kelly. Plaintiff states a money order mailed to him by his mother on May 24, 2016, was lost by Green Haven's package room for approximately two weeks. In addition, plaintiff states he was denied participation in his job assignment program for nearly a year after his arrival at Green Haven.

In September 2016, after plaintiff's transfer to Green Haven, there was no demonstration commemorating the Attica uprising at Sullivan.

## DISCUSSION

I.  Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine

issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249−50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Retaliation Under Section 1983

Defendants argue the undisputed facts demonstrate that plaintiff was not retaliated against for exercising his First Amendment rights.

The Court agrees.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). To satisfy the causal connection prong, plaintiff must allege "the conduct was a substantial or motivating factor for the adverse actions." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." Scott v. Coughlin, 344 F.3d 282, 287–88 (2d Cir. 2003). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." Id.

The Second Circuit has cautioned that "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (internal quotation omitted).

"[B]ecause prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' [courts] are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d at 137 (quoting Dawes v. Walker, 239 F.3d at 491).

In addition, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

Plaintiff testified that after he complained about C.O. Kelly to Sergeant Maliga and filed his grievance, defendants retaliated against him by (i) transferring him to Green Haven; (ii) issuing him a false misbehavior report; (iii) threatening him; and (iv) interfering with his mail.

Plaintiff satisfies the first element of a First Amendment retaliation claim, as complaints about prison staff and use of the prison grievance system constitute protected activity. Gill v. Pidlypchak, 389 F.3d at 384.

Nevertheless, as set forth below, there is no genuine issue of material fact with regard to the second and third elements of plaintiff's claims, and it is clear defendants are entitled to summary judgment as a matter of law.

A.     Plaintiff's Transfer

Plaintiff asserts his transfer to Green Haven "was the biggest retaliation against" him. (Pl. Dep. at 21; see also Opp'n at 14 ("The adverse treatment plaintiff suffered as a result of defendants [sic] retaliatory transfer, was the transfer itself.")).

Plaintiff's assertion that he was transferred in retaliation for his complaint and grievance about C.O. Kelly is supported only by the temporal proximity between his grievance, which was submitted on September 18, 2015, and his transfer, which took place on October 13, 2015.

On the other hand, defendants assert plaintiff was transferred due to legitimate security concerns at Sullivan. In addition, defendants proffer evidence sufficient to establish that plaintiff would have been transferred regardless of any improper retaliatory motive.

First, defendants submit a declaration from Supt. Keyser stating that because plaintiff "was suspected to be involved" in a 2014 commemoration of the Attica uprising, staff at Sullivan were "asked to observe [p]laintiff around the 2015 anniversary." (Keyser Decl. ¶ 10). Based on the results of the investigation, Supt. Keyser determined plaintiff "was involved in planning these commemoration demonstrations." (Id. ¶ 11). Supt. Keyser states he requested plaintiff's transfer "to stop an annual inmate demonstration, the sort of which can pose a serious risk to facility security." (Id. ¶ 23).

In addition, defendants proffer contemporaneous emails regarding plaintiff's transfer. The first is dated September 17, 2015. Because this email pre-dates plaintiff's September 18, 2015, grievance, it is strong evidence defendants would have transferred plaintiff to another facility regardless of any retaliatory motive. Subsequent emails among Sullivan staff reflect that plaintiff's transfer was precipitated by "the small Attica demonstration" at Sullivan. (Keyser Decl. Ex. C at 6).

Further, defendants submit a declaration from C.O. Kelly, stating he "did not speak to anyone," including Supt. Keyser, "about having Plaintiff transferred from Sullivan," and "did not conspire or attempt to arrange for Plaintiff to be transferred." (Kelly Decl. ¶¶ 14–15).

Finally, plaintiff's September 24, 2015, transfer order states as the explanation for transfer that plaintiff "is overfamiliar w [sic] staff and facility operations," and cites "security concerns as [plaintiff] was complicit in the Attica anniversary demonstrations." (Keyser Decl.

Ex. D). The transfer order further states "transfer requested in order to proactively maintain the safety of the facility." (Id.)

In view of the foregoing, it is clear plaintiff would have been transferred to Green Haven regardless of his complaint and grievance about C.O. Kelly. No reasonable juror could conclude otherwise. Accordingly, summary judgment is appropriate with respect to plaintiff's retaliatory transfer claim.

> B.     Plaintiff's Misbehavior Report

Plaintiff next asserts the September 17 misbehavior report issued by C.O. Kelly was retaliatory.

A prison inmate has "no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). Nevertheless, it is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

However, plaintiff fails to present evidence sufficient to establish a causal connection between his complaints about C.O. Kelly and the September 17 misbehavior report.

Here again, plaintiff's only evidence of retaliatory intent is the temporal proximity between his complaint to Sergeant Maliga, and the September 17 misbehavior report.[1] Temporal proximity is circumstantial evidence of retaliation, but without more, it is insufficient to survive summary judgment. See, e.g., Ayers v. Stewart, 101 F.3d 687, 1996 WL 346049, at *1 (2d Cir.1999) (table) (Plaintiff's "reliance on circumstantial evidence of retaliation—namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were

---

[1]     It is not clear from plaintiff's grievance when he complained to Sergeant Maliga about C.O. Kelly, but the Court assumes plaintiff's complaint was close in time to his September 18, 2015, grievance, and therefore close in time to the September 17 misbehavior report.

previously filed against him—does not suffice to defeat summary judgment.");[2] Colon v. Coughlin, 58 F.3d at 873.

Plaintiff offers no additional evidence of retaliation, such as a previously clean disciplinary history, or incriminating statements by C.O. Kelly. Accordingly, summary judgment is appropriate with respect to plaintiff's retaliatory misbehavior report claim.

C.    C.O. Kelly's Alleged Threats

Plaintiff also asserts C.O. Kelly offered plaintiff's job to another inmate, and made a threatening shooting gesture toward plaintiff, in retaliation for plaintiff's complaint and grievance.

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation omitted). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id.

Threats may constitute an adverse action, but "[t]he less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." Mateo v. Fischer, 682 F. Supp. 2d 423, 435 (S.D.N.Y. 2010); see also Ross v. Westchester Cty. Jail, 2012 WL 86467, at *7 (S.D.N.Y. Jan.11, 2012) ("Non-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim.").

Here, C.O. Kelly's alleged threats, comprised of a remark made to another inmate, and a single gesture, do not rise to the level of an adverse action. Thus, although C.O. Kelly is alleged

---

[2]    Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d. Cir. 2009).

to have used offensive language when offering plaintiff's job to another inmate, summary judgment is appropriate with respect to plaintiff's retaliatory threat claim.

### D. Alleged Interference with Plaintiff's Mail

Plaintiff asserts that after he was transferred to Green Haven, the package room at that facility lost a money order plaintiff's mother mailed to him.

A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. See Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975). "Rather, the inmate must show that prison officials regularly and unjustifiably interfered with" his mail. Davis v. Goord, 320 F.3d at 351 (internal quotation omitted).

Plaintiff does not allege additional instances of mail tampering, or state what harm arose from his delayed receipt of the money order. Therefore, summary judgment is appropriate with respect to plaintiff's retaliatory mail interference claim.

## III. Due Process

A liberal reading of plaintiff's opposition and declaration suggests plaintiff also intends to assert a Fourteenth Amendment due process claim based on his transfer to Green Haven.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983).

The Second Circuit has held that the transfer of an inmate "'to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause

itself." Covino v. Vermont Dept. of Corrs., 933 F.2d 128, 129 (2d Cir. 1991) (quoting Hewitt v. Helms, 459 U.S. at 468). Here, aside from conclusory allegations, plaintiff has submitted no evidence to demonstrate he was transferred for punitive reasons, rather than for the legitimate purpose of maintaining institutional security.

Moreover, "New York law does not place conditions on interprison transfers." Matiyn v. Henderson, 841 F.2d 31, 34 (2d Cir. 1988); see also Leneau v. Ponte, 2018 WL 566456, at *13 (S.D.N.Y. Jan. 25, 2018) (courts in this district "have found that New York laws and regulations give prison officials broad discretion to transfer inmates between facilities").

Accordingly, plaintiff had no liberty interest in remaining at Sullivan, and to the extent he asserts a due process claim based on his transfer to Green Haven, that claim is dismissed.

## CONCLUSION

The motion for summary judgment motion is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #65) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: July 26, 2018
   White Plains, NY

       SO ORDERED:

       _____
       Vincent L. Briccetti
       United States District Judge